**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| ALAN LUTZ,                                                                                                   | 1:08-CV-01787-OWW-DLB                     |
|--------------------------------------------------------------------------------------------------------------|-------------------------------------------|
|                                        Plaintiff,                                                            | ORDER RE DEFENDANTS' MOTION TO DISMISS    |
| v.                                                                                                           |                                           |
| DELANO UNION SCHOOL DISTRICT, RONALD GARCIA, JOSEPH HUNTER, LINDA ENRIQUEZ, AND DOES I THROUGH CC, inclusive, |                                           |
|                                        Defendants.                                                           |                                           |

## I.   INTRODUCTION

Before the court is a 12(b)(6) motion to dismiss brought collectively by Defendants Delano Union School District, Ronald Garcia, Joseph Hunter, and Linda Enriquez ("Defendants"). The motion is directed at the claims asserted by Plaintiff Alan Lutz ("Plaintiff") in his First Amended Complaint ("FAC") which he filed after the court granted Defendants' prior motion to dismiss.

Previously, on July 14, 2008, Plaintiff filed a complaint against his employer, Delano Union School District, and Garcia, Hunter, and Enriquez, in the Kern County Superior Court. On November 20, 2008, the action was removed to this court based on federal question jurisdiction. In his state-court complaint, Plaintiff alleged a violation of his First Amendment rights under 42 U.S.C. § 1983. Plaintiff also asserted a supplemental state law claim under California Civil Code § 52.1. Defendants filed a prior 12(b)(6) motion which this court granted with leave to amend. After Plaintiff amended his complaint, Defendants filed the present motion to dismiss which raises essentially the same arguments as

the prior motion.  Plaintiff filed an untimely opposition.

The following background facts are taken from the FAC.[1]

## II.  BACKGROUND

**A.  The Parties**

Plaintiff is employed by the Delano Union School District (the "School District"), a public school district in California. (Doc. 11 at 1-2.)  Defendants Garcia, Hunter, and Enriquez are also employed by the School District. (*Id.* at 2.)

**B.  Plaintiff's Alleged Protected "Speech" And The Subsequent "Retaliation"**

As alleged:

> On or about February 8, 2007, [P]laintiff verbally demanded of defendant LINDA ENRIQUEZ that she explain immediately why favoritism was being demonstrated by her in the capacity of principal with DELANO on the basis of children whose national origin was other than that of the United States of America and, upon not receiving a satisfactory answer, made loud and public proclamation in her immediate proximity that she was biased against students whose national origin and/or ancestry was the United States of America.

(*Id.*)  Plaintiff alleges that his "proclamation" against Enriquez was an exercise of his right, under the United States and California constitutions, "to free speech on matters of public importance – to wit; disparate treatment of students in public school settings based upon their national origin and/or ancestry." (*Id.*)

Plaintiff alleges that defendants took "adverse actions" against him in retaliation for his speech. (*Id.*)  Plaintiff asserts:

> In direct retaliation for this speech, defendants and

---

[1] The FAC is Document ("Doc.") 11.

2

> each of them took adverse actions against [P]laintiff in his employment with DELANO by making verbal and written complaints against him which complaints were that [P]laintiff caused a disturbance in a public school and/or abused his position as an employee of DELANO to obtain access to LINDA ENRIQUEZ for uttering the speech characterized hereinabove, and further interfered with the free exercise of rights secured to [P]laintiff by Amendment I of the United States Constitution by directing him not to utter speech accusing LINDA ENRIQUEZ of disparate treatment of students based upon their national origins and/or ancestry upon threat of sanctions in his employment with DELANO and by taking retaliatory actions against defendant [sic], including, but not limited to causing him to suffer a 30 day suspension of his employment with DELANO and the corresponding loss of compensation and benefits therefore, which actions intentionally and adversely, without just cause, resulted in an interference with [P]laintiff's employment in that [P]laintiff's employment was suspended for 30 days and he lost compensation and benefits therefore that he would otherwise be entitled to receive and thereby caused [P]laintiff to suffer hardships in his employment in terms of working conditions and in terms of compensation and caused [P]laintiff to lose income and/or other benefits that would otherwise have been earned by [P]laintiff in the course of his employment with DELANO.

(*Id.* at 2-3.) Based on these allegations, Plaintiff alleges two claims in the FAC.

C.   Claims In The FAC

Plaintiff's "First Cause of Action" is for an alleged violation of the First Amendment under 42 U.S.C. § 1983. Plaintiff asserts that the retaliation taken against him for his speech violated the First Amendment. This claim is asserted against each defendant. (*Id.* at 3.) With respect to the individual defendants, Plaintiff alleges that at the time of the claimed retaliation, Garcia, Hunter and/or Enriquez "were then and there acting out of personal animosity towards [P]laintiff to dissuade him from exercising his right to free speech" and were "acting outside the scope and purpose of their employment with DELANO." (*Id.* at 4.)

3

1  Plaintiff's "Second Cause of Action," brought under California
2  Civil Code § 52.1, asserts a violation of the free speech provision
3  of the California Constitution and the First Amendment to the
4  United States Constitution. (*Id.* at 5.)  This claim is also
5  asserted against each defendant. Plaintiff alleges that Defendants
6  interfered with his free speech rights under the California and
7  United States constitutions by "threats, coercion and/or
8  intimidation." (*Id.*)

**D.   Defendants' Motion**

In their motion Defendants seek dismissal of the § 1983 claims against the School District and the individual defendants in their official capacity.  Defendants argue that Plaintiff has failed to sufficiently plead a policy, custom or practice of the School District that is allegedly responsible for the asserted constitutional violation.

Defendants also seek dismissal of Plaintiff's state law claim alleged under California Civil Code § 52.1.  Defendants argue that Plaintiff has failed to sufficiently plead the requisite elements to survive a 12(b)(6) motion.

**E.   Plaintiff's Untimely Opposition**

Given the hearing date on this motion – August 3, 2009 – Plaintiff's opposition brief was due on July 20, 2009, fourteen days prior to the hearing date. *See* Local Rule 78-230(c). Plaintiff filed his opposition on July 28, 2009, several days beyond the deadline.  Plaintiff did not move for an extension of

4

time to file an opposition.² Future compliance with the local rules is expected.

In his opposition brief, Plaintiff raises arguments only in defense of his first cause of action, i.e., his § 1983 claim. Plaintiff states that he has "decided not to oppose defendants' motion to dismiss the second cause of action in the FAC and [he] asks this court to take this as his notice of non-opposition to that portion of defendants' motion to dismiss the FAC." (Doc. 16 at 3.) Plaintiff states that he "believes that his claim for redress will be fully addressed by the allegations set forth in the first cause of action pled under the provisions of 42 U.S.C. § 1983." (*Id.*) Plaintiff requests that the "court . . . take such action as it sees fit as to the second cause of action in the FAC." (*Id.*)

### III.   STANDARD OF DECISION

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss can be made and granted when the complaint fails "to state a claim upon which relief can be granted." Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

To sufficiently state a claim to relief and survive a 12(b)(6) motion, a complaint "does not need detailed factual allegations" but the "[f]actual allegations must be enough to raise a right to

---

² **A district court has discretion to consider an untimely opposition brief. *High Sierra Hikers Ass'n v. U.S. Forest Serv.*, 436 F. Supp. 2d 1117, 1140-41 (E.D. Cal. 2006); *Martin v. City of Oceanside*, 205 F. Supp. 2d 1142, 1148 (S.D. Cal. 2002).**

5

relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Id.* Rather, there must be "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. In other words, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal citation and quotation marks omitted).

In deciding whether to grant a motion to dismiss, the court must accept as true all "well-pleaded factual allegations." *Iqbal*, 129 S. Ct. at 1950. A court is not, however, "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *see, e.g.*, *Doe I v. Wal-Mart Stores, Inc.*, __ F.3d __, 2009 WL 1978730, at *3 (9th Cir. July 10, 2009) ("Plaintiffs' general statement that Wal-Mart exercised control over their day-to-day employment is a conclusion, not a factual allegation stated with any specificity. We need not accept Plaintiffs' unwarranted conclusion in reviewing a motion to dismiss.").

6

The Ninth Circuit has summarized the governing standard, in light of *Twombly* and *Iqbal*, as follows: "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, __ F.3d __, 2009 WL 2052985, at *6 (9th Cir. July 16, 2009) (internal quotation marks omitted).

## IV. DISCUSSION

### A. First Amendment Retaliation Claim - § 1983

Defendants move to dismiss the § 1983 claim against the School District and the individual defendants in their official capacities on the grounds that Plaintiff has failed to adequately plead a policy, custom or practice of the School District that is responsible for the alleged civil rights deprivation.

#### 1. The School District

"[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

In *Lytle v. Carl*, 382 F.3d 978, 982 (9th Cir. 2004), the Ninth Circuit discussed several ways in which a *Monell* claim could be asserted against a school district. Generally speaking,

> [a] school district's liability under *Monell* may be premised on any of three theories: (1) that a district employee was acting pursuant to an expressly adopted official policy; (2) that a district employee was acting pursuant to a longstanding practice or custom; or (3)

that a district employee was acting as a 'final policymaker.'

*Id*. In his opposition brief, Plaintiff does not argue that he is asserting a *Monell* claim under the first or second theory stated in *Lytle*, i.e., Plaintiff does not argue that he was retaliated against by "a district employee . . . acting pursuant to expressly adopted official policy" or "a longstanding practice or custom" of the School District. *Lytle*, 382 F.3d at 982. At one point in the FAC, however, it appears that Plaintiff is attempting to assert such a theory.

In paragraph 3 of the FAC, Plaintiff alleges:

> At all times material hereto, defendants RONALD GARCIA, JOSEPH HUNTER and LINDA ENRIQUEZ were individuals employed by defendant DELANO and, except as expressly alleged hereinafter, were acting within the course and scope of their employment with defendant DELANO *and in accordance with a policy, custom, and practice* of DELANO.

This conclusory statement, which is unsupported by any factual allegations as to what that "policy, custom, and practice" consists of, who established it, when, or for what purpose, does not sufficiently allege a basis for *Monell* liability. *See Iqbal*, 129 S. Ct. at 1949 ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.") (internal quotation marks omitted). Moreover, another paragraph of Plaintiff's complaint, paragraph 12, is materially inconsistent with the claim that the individual defendants were acting pursuant to an "official policy, custom, and practice" when retaliating against Plaintiff.

Paragraph 12 of the FAC states that at the time of the alleged retaliation, the individual defendants were acting *outside the scope of their employment*:

8

> In doing the things alleged in the First Cause of Action, defendants RONALD GARCIA ('GARCIA') JOSEPH HUNTER ('HUNTER') and/or LINDA ENRIQUEZ ('ENRIQUEZ') were then and there acting out of personal animosity towards [P]laintiff to dissuade him from exercising his right to free speech and were then and there motivated by their individual animosity to take and encourage the actions alleged to have been taken and encouraged against [P]laintiff and were, therefore, acting outside the scope and purpose of their employment with DELANO.

If the individual defendants were "acting outside the scope and purpose of their employment" they were not acting pursuant to or in furtherance of any official policy, custom or practice of the School District at the same time.

Plaintiff has not sufficiently alleged that, in retaliating against him, a district employee was acting pursuant to an official policy, custom or practice of the School District.  There is no explanation as to what comprises the "policy, custom, and practice" referred to in the FAC and other allegations in the FAC conflict with the theory that the individual defendants were acting pursuant to an official policy, custom or practice.

In his opposition brief, Plaintiff explains his theory of *Monell* liability against the School District:

> [T]he FAC pleads a cause of action for deprivation of civil rights against the Delano Union School District directly as the plaintiff's employer.  The FAC alleges that Delano Union School District, acting out of a desire to retaliate against plaintiff for the exercise of free speech protected by the First Amendment of the United States Constitution, suspended his employment for a period of thirty days.

(Doc. 16 at 3.)  In other words, Plaintiff claims that a decision was made to suspend his employment, this decision was unlawful because it constituted retaliation for engaging in protected speech, and the School District is responsible for this decision.

9

What is missing from Plaintiff's complaint, and from his opposition brief, however, is the identity of any decision-maker involved or any indication as to how the decision to suspend him can be attributed to the School District for purposes of *Monell* liability.

A *Monell* claim can be premised on a single decision which causes of constitutional violation. *See Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 405 (1997); *Lassiter v. City of Bremerton*, 556 F.3d 1049, 1055 (9th Cir. 2009); *Lytle,* 382 F.3d at 983; *Christie v. Iopa*, 176 F.3d 1231, 1235-36 (9th Cir. 1999); *Davis v. City of Ellensburg*, 869 F.2d 1230, 1234 (9th Cir. 1989). But, to advance such a theory, the decision must be one that is "attributable to", *Brown*, 520 U.S. at 405, i.e., considered the decision of, the local governmental entity. If the decision cannot be attributed to the local governmental entity, then the decision does not reflect a "policy" of that entity for *Monell* purposes. There are at least three legal theories by which the decision to suspend Plaintiff could be attributed to the School District.

First, the decision to suspend Plaintiff could be attributed to the School District for *Monell* purposes if the decision-maker who suspended Plaintiff is a "final policymaker" of the School District "with respect to employment-related decisions, particularly employee discipline." *Lytle*, 382 F.3d at 983; *see also Christie*, 176 F.3d at 1235-36. "For a person to be a final policymaker, he or she must be in a position of authority such that a final decision by that person may appropriately be attributed to the District." *Lytle*, 382 F.3d at 983. No such person is identified.

Second, the decision to suspend Plaintiff could be attributed

10

to the School District if the decision was made by the authorized governing body of the School District (i.e., a collection of its final policymakers). *See Bateson v. Geisse*, 857 F.2d 1300, 1303 (9th Cir. 1988) ("[A] municipality may be held liable under § 1983 for a single decision by its properly constituted legislative body-whether or not that body had taken similar action in the past or intended to do so in the future-because even a single decision by such a body unquestionably constitutes an act of official government policy." (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986))); *Evers v. County of Custer*, 745 F.2d 1196, 1203 (9th Cir. 1984) (concluding that a county's § 1983 liability could be premised on the decision of its "Commissioners, the County's governing body"). No such decision by a governing body is identified.

Third, the decision to suspend Plaintiff could be attributed to the School District if the decision was made by a district employee and that decision was ratified by a final policymaker for the School District or ratified by an authorized governing body of the School District. *Lytle*, 382 F.3d at 987. As stated in *Lytle*:

> A municipality may be held liable for a constitutional violation if a final policymaker ratifies a subordinate's actions. To show ratification, a plaintiff must show that the authorized policymakers approve a subordinate's decision and the basis for it. The policymaker must have knowledge of the constitutional violation and actually approve of it. A mere failure to overrule a subordinate's actions, without more, is insufficient to support a § 1983 claim.

*Id.* (internal citations and quotation marks omitted)*; see also Christie*, 176 F.3d at 1238-39. No ratification allegations are made.

Instead of alleging that the decision to suspend him was made

11

or ratified by a final policymaker or the authorized governing body of the School District, Plaintiff merely alleges that the "defendants and each of them took adverse actions against plaintiff in his employment," including "causing him to suffer a 30 day suspension." (Doc. 11 at 1-2.)  The School District is apparently included in the "defendants and *each of them*" allegation.

Even if Plaintiff's allegation can be construed as a statement that the *School District* suspended Plaintiff and thereby retaliated against him, this conclusory statement is insufficient. *See Iqbal*, 129 S. Ct. at 1949 (recognizing that "a plaintiff armed with nothing more than conclusions" cannot survive a motion to dismiss); *Doe I.*, __ F.3d at __, 2009 WL 1978730 at *3 ("Plaintiffs' general statement that Wal-Mart exercised control over their day-to-day employment is a conclusion, not a factual allegation stated with any specificity.  We need not accept Plaintiffs' unwarranted conclusion in reviewing a motion to dismiss.").  There are no facts alleged which would suggest that the decision to suspend Plaintiff is properly attributed to the School District.  Nothing in the complaint indicates that a final policymaker or governing body of the School District suspended Plaintiff or ratified a decision to suspend Plaintiff. Absent such allegations, the complaint fails to raise the prospect of *Monell* liability against the School District to the "plausible" level. *Twombly*, 550 U.S. at 570.

Defendants' motion to dismiss is GRANTED.  Plaintiff has already been granted one opportunity to amend his complaint to sufficiently allege a basis of *Monell* liability against the School District. *See Lutz v. Delano Union High Sch. Dist.*, No. 1:08-CV-01787-OWW-DLB, 2009 WL 789919, at *5 (E.D. Cal. Mar. 23, 2009).

**Leave to amend is GRANTED for one final opportunity. No further leave will be given.[3]**

---

[3] **An amendment to the pleadings may, however, prove futile. Eleventh Amendment immunity can be considered *sua sponte*. *In re Jackson*, 184 F.3d 1046, 1048 (9th Cir. 1999). Ordinarily, public school districts *in California* are entitled to Eleventh Amendment immunity. *See Corales v. Bennett*, 567 F.3d 554, 573 (9th Cir. 2009) ("The district court correctly determined that school districts in California are immune from § 1983 claims by virtue of Eleventh Amendment immunity."); *Belanger v. Madera Unified Sch. Dist.*, 963 F.2d 248, 254 (9th Cir. 1992). Here, however, the School District removed this lawsuit from state court to federal court (Doc. 1), and by doing so, it appears the School District waived its Eleventh Amendment immunity. *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 616, 624 (2002); *Embury v. King*, 361 F.3d 562, 564-66 (9th Cir. 2004). Even though the School District may have "waived its Eleventh Amendment immunity when it removed this case to federal court, *Lapides* itself makes clear that such waiver does not make a state or its agencies 'persons' under § 1983." *Costanich v. Washington*, No. C05-0090MJP, 2008 WL 1968775, at *8 (W.D. Wash. May 2, 2008). In analyzing whether a public school district was entitled to Eleventh Amendment immunity, the Ninth Circuit in *Belanger* concluded that a public school district in California is a "state agency for purposes of the Eleventh Amendment," i.e., an "arm of the state." 963 F.2d at 250-51. In *Will v. Michigan Department of State Police*, 491 U.S. 58, 70 (1989) the Supreme Court concluded that a "person" who can be held liable under § 1983 does *not* include "States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes." Putting *Belanger* and *Will* together, several courts have concluded that a public school district in California is *not* a "person" subject to suit under § 1983. *See McDonald v. S.F. Unified Sch. Dist.*, No. C 07-4249 PJH, 2008 WL 205278, at *7 (N.D. Cal. Jan. 23, 2008); *Carmen v. S.F. Unified Sch. Dist.*, 982 F. Supp. 1396, 1403-04 (N.D. Cal. 1997); *Kirchmann v. Lake Elsinore Unified Sch. Dist.*, 83 Cal. App. 4th 1098, 1100-01 (2000); *cf. Stoner v. Santa Clara County Office of Educ.*, 502 F.3d 1116, 1122-23 (9th Cir. 2007) (concluding that a California school district was an arm of the state and not a "person" under § 3729 of the False Claims Act). Rather than conclusively decide at this time whether the School District is a "person" under § 1983 – something which Defendants have not squarely argued – the issue is noted here so that counsel**

### 2. <u>The Individual Defendants</u>

Defendants argue that Plaintiff failed to assert facts sufficient to support official capacity claims against Garcia, Hunter, and Enriquez. Defendants are correct. If Plaintiff is attempting to assert official capacity claims against the individual defendants, he has failed to do so.

In his opposition brief, however, Plaintiff does not contend that he is asserting official capacity claims. A review of the FAC reveals that Plaintiff does specifically allege that he is suing any individual defendant in their "official capacity." As long as the School District is a defendant, an official capacity claim would be a redundancy as it is no more than a claim against the School District. *See Ctr. for Bio-Ethical Reform, Inc. v. L.A. County Sheriff Dep't*, 533 F.3d 780, 799 (9th Cir. 2009). Moreover, Plaintiff specifically alleges that, in retaliating against him, the individual defendants were acting "outside the scope and purpose of their employment" which does not suggest that the individual defendants were acting in their official capacities. The allegation in the FAC that the individual defendants were acting "under color of law" does not indicate Plaintiff is asserting official capacity claims against them. It is axiomatic that in a § 1983 case a person can be sued in his or her personal capacity for acts under color of law. *See Hafer v. Melo,* 502 U.S. 21, 25 (1991) ("Personal-capacity suits, on the other hand, seek to impose individual liability upon a government officer for actions

---

can consider it when deciding whether he can amend the complaint consistent with Rule 11.

**14**

taken under color of state law. Thus, [o]n the merits, to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right.") (alterations in original) (internal quotation marks omitted) (emphasis added).

Plaintiff's complaint does not purport to assert official capacity claims, and Plaintiff does not argue that he is asserting official capacity claims. There are no official capacity claims to dismiss. Defendants' motion to dismiss is DENIED to the extent is seeks dismissal of official capacity claims which Plaintiff has not even alleged. The claims are alleged against the individual defendants only in their individual capacities.

B.   <u>State Law Claim – California Civil Code § 52.1</u>

Defendants argue that Plaintiff has not alleged sufficient facts to support his state law claim under California Civil Code § 52.1. Plaintiff's "opposition" brief contains a statement of non-opposition to Defendants' motion to the extent Defendants' motion deals with this claim. According to Plaintiff, he "believes that his claim for redress will be fully addressed by the allegations set forth in the first cause of action pled under the provisions of 42 U.S.C. § 1983." Plaintiff requests that the "court . . . take such action as it sees fit as to the second cause of action in the FAC," i.e., the state law claim under § 52.1.

Plaintiff's submission is construed as an acknowledgment that his state law claim under California Civil Code § 52.1 is duplicative of his federal claim under § 1983 and/or that Plaintiff does not wish to prosecute his state law claim. Accordingly, Plaintiff's state law claim is DISMISSED without prejudice.

15

## V.   CONCLUSION

For the reasons stated, Defendants' motion to dismiss is:

1. **GRANTED, IN PART, WITH LEAVE TO AMEND** as to the § 1983 claim against the School District; and

2. **GRANTED** as to Plaintiff's state law claim under California Civil Code § 52.1, which is **DISMISSED** without prejudice.

Any amended complaint shall be filed within 20 days following electronic service of this decision.

IT IS SO ORDERED.

**Dated:   August 7, 2009**            /s/ **Oliver W. Wanger**
                                       UNITED STATES DISTRICT JUDGE